UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FIRE & MARINE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>PHYSICIANS REIMBURSEMENT FUND, INC.,<br><br>Defendant. | Case No. 21-cv-06867-SK<br><br>**ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT**<br><br>Regarding Docket Nos. 33, 33-2, 35 |

This matter comes before the Court upon consideration of the motion for partial summary judgment filed by Plaintiff National Fire & Marine Insurance Company ("Plaintiff") and the cross-motion for partial summary judgment filed by Defendant Physicians Reimbursement Fund, Inc. ("Defendant").  Having carefully considered the parties' papers, relevant legal authority, the record in the case, and having had the benefit of oral argument, the Court hereby DENIES Plaintiff's motion and GRANTS Defendant's motion for the reasons set forth below.  The Court GRANTS Plaintiff's request for judicial notice.  Fed. R. Evid. 201.

## BACKGROUND

Plaintiff and Defendant, both insurance companies, dispute coverage for a claim resulting from a cryogenic freezer tank failure at the San Francisco Fertility Center d.b.a. Pacific Fertility Clinic ("PFC") on March 4, 2018.  Plaintiff defended its insureds in hundreds of actions in state and federal courts and arbitration proceedings.  The claims were also tendered to Defendant, which declined coverage for its insureds.  In this action, Plaintiff seeks equitable contribution from Defendant for Defendant's alleged share of coverage.

**A.    Description of Entities and Individuals.**

PFC is a private, unincorporated entity founded in 1999 to provide fertility services.   (Dkt.

1  No. 34-1 (Ex. 1 to the Declaration of William J. Casey).)  PFC purchased Tank 4 (the tank at

2  issue) from the manufacturer Chart Industries, Inc. ("Chart") in 2001.  (Dkt. No. 33-6 (Ex. 2 to

3  Declaration of Lance D. Orloff) at p. 10.)  PFC employed the following physicians:  Eldon D.

4  Schriock, M.D., Carol Givens, M.D., Phillip Chenette, M.D., Carl M. Herbert, M.D., Liyun Li,

5  M.D., and Isabelle P. Ryan, M.D. (the "Physicians").

6  PFC sold its laboratory to Prelude Fertility, Inc. ("Prelude"), and its wholly owned

7  subsidiary, Pacific MSO, LLP ("Pacific MSO") on September 13, 2017.  (Dkt. No. 34-12 (Ex. 10

8  to Casey Decl.).)  Prelude and Pacific MSO employed the personnel responsible for the tissue-

9  storage operation, including Joseph Conaghan, Ph.D. ("Conaghan"), the director of the laboratory

10  where Tank 4 was located.  (Dkt. Nos. 35-5 and 35-10 (Exs. 1 and 6 to Casey Decl.).)

11  **B.  The Policies.**

12  Plaintiff issued two different policies implicated in this case:  (1) an "entity policy," Policy

13  HN026799, for Prelude and Pacific MSO and employees, and (2) a "physician policy," Policy

14  HN030954 for the Physicians and PFC.  (Dkt. Nos. 34-4 and 34-5 (Exs. 2 and 3 to Casey Decl.).

15  Defendant issued one type of insurance policy covering the Physicians from 2010 to 2017.

16  (Dkt. Nos. 33-26, 33-27, 22-28 (Exs. 22-24 to Orloff Decl.).)  Defendant's policy provides

17  indemnity coverage for damages arising from an Occurrence in which the insured's rendering or

18  failing to render patient services results in a loss or injury.  (Dkt. No. 33-27 (Ex. 23 to Orloff

19  Decl.).)  The policy defines "Patient Services" as "health care services provided by the Insured to

20  a patient including treatment, diagnosis, referrals for treatment, rendering of medical opinions or

21  providing medical advice, furnishing or prescribing drugs, medical supplies or appliances. . . ."

22  (*Id.*)

23  Defendant's policy defines "Laboratory Services" as "any service or performance of any

24  activity in connection with administering a laboratory test or examination as specifically defined

25  in California Business & Professions Code Section 1206(a)([5]).[1]  (Dkt. No. 33-37 (Ex. 23 to

26

27  ───────────────

28  [1] California Business and Professions Code was renumbered in 2013 and the correct
statutory provision is § 1206(a)(5), not 1206(a)(4).  (Dkt. No. 33 at p. 18 n. 9; *see also* Dkt. Nos.
33-15, 33-24 (Exs. 11, 20 to Orloff Decl.).)

United States District Court
Northern District of California

1    Orloff Decl.).)

2    **C.    Failure of the Tank and Ensuing Litigation.**

3        The California Court of Appeals described the action underlying this insurance dispute as

4    follows:

5            These coordinated proceedings arose following the failure in 2018 of
             a cryogenic storage tank, which was manufactured by Chart and used
6            by PFC, a San Francisco fertility clinic, to store patients' reproductive
             material.   During the failure, the tank's nitrogen levels dropped,
7            causing the temperature to rise and potentially endangering the eggs
             and embryos stored inside.   PFC patients and others affected by the
8            tank's failure sought recourse, resulting in hundreds of claims in
             federal and state courts and arbitration proceedings.
9
     *Pac. Fertility Cases*, 78 Cal. App. 5th 568, 573 (2022) (footnotes omitted).
10
         The California Court of Appeals further described the procedural status of the cases:
11
             A putative class action was first filed in federal court against PFC,
12           Prelude, Pacific MSO, and Chart. . . . (See *In re Pacific Fertility
             Center Litigation* (N.D. Cal., [C]ase No. 3:18-cv-01586) filed May
13           30, 2018.)   As a result of motions to compel arbitration, and an
             ensuing appeal to the Ninth Circuit Court of Appeals, claims against
14           Chart proceeded in federal court while claims against the remaining
             defendants proceeded in arbitration.   The district court, however,
15           denied the plaintiffs' motion for class certification.   As a result, nearly
             150 individual lawsuits against Chart were pending in federal court.
16
     *Pac. Fertility Cases*, 78 Cal. App. 5th at 573.  The Court refers to all of the actions filed in federal
17
     court, state court, and in arbitration as the "Underlying Actions."
18
     **D.    Federal Cases.**
19
         Individuals sued PFC, Prelude, Pacific MSO, and Chart in this Court in the case eventually
20
     titled:  *In re Pacific Fertility Center, et al.*, Case No. 18-cv-01586-JSC.  The Physicians were not
21
     initially named as defendants in the federal litigation.  However, on October 10, 2019, Chart filed
22
     a third-party complaint against PFC, the Physicians, and Conaghan in the federal action.  (Dkt.
23
     No. 34-16; *see also In re Pacific Fertility Center, et al.*, Case No. 18-cv-01586-JSC at Dkt. No.
24
     288.)
25
         The PFC, the Physicians, and Conaghan filed motions to dismiss Chart's claims against
26
     them, and on February 27, 2020, the Court granted the motion with leave to amend.  (*See In re
27
     Pacific Fertility Center, et al.*, Case No. 18-cv-01586-JSC at Dkt. Nos. 339, 362, 406.)  Chart did
28

United States District Court
Northern District of California

not amend that third-party complaint against the Physicians and Conaghan.  PFC, Prelude, and

Pacific MSO were successful in compelling arbitration.  *Pac. Fertility Cases*, 78 Cal. App. 5th at

573.  Thus, Chart was the sole remaining defendant when the first bellwether case went to trial in

federal court.

The California Court of Appeals described the disposition of the Underlying Actions as

follows:

> The first federal bellwether trial was conducted in mid-2021, resulting
> in a jury verdict against Chart. . . . The jury found that the cryogenic
> storage tank had a manufacturing defect and failed to perform as
> safely as expected.  It also concluded that the tank's design was a
> substantial factor in causing harm to the plaintiffs.  The jury
> apportioned 90 percent of the liability to Chart and 10 percent to PFC.

*Pac. Fertility Cases*, 78 Cal. App. 5th at 573-74 (footnotes omitted); (*See also In re Pacific*

*Fertility Center, et al.*, Case No. 18-cv-01586-JSC at Dkt. No. 858.)

**E.     State Court and Arbitration Proceedings.**

As noted above, individuals also filed multiple state court actions and arbitration

proceedings – 60 individual lawsuits in California state courts and 260 arbitration proceedings.

*Pac. Fertility Cases*, 78 Cal. App. 5th 568, 574 (2022).  Of those, 45 state court lawsuits and 256

arbitration proceedings were tendered to Defendant.  (Dkt. No. 33-30 (Ex. 26 to Orloff Decl.).)

The complaints differed in whom they named as defendants, but, based on the captions, it appears

as though most, if not all, named PFC and the Physicians in the cases tendered to Defendant.  (*Id.*)

**F.     Plaintiff's Coverage in the Underlying Actions.**

Plaintiff provided coverage to its insureds in the Underlying Actions under both its entity

policy and physician policy.  After the Physicians raised a concern about a conflict of interest

between them and Prelude in the third-party action Chart brought against them in federal court,

Plaintiff hired separate counsel to represent them.  (Dkt. No. 35-9 (Ex. 5 to Casey Decl.) at 43:7-

44:15; Dkt. No. 35-16 (Ex. 12 to Casey Decl.).)  Plaintiff hired Morrison & Foerster LLP to defend

Prelude, Pacific MSO, and Conaghan and hired Galloway, Lucchese, Everson & Picchi, A

Professional Corporation, to defend the Physicians and PFC.  (Dkt. No. 35-16.)

United States District Court
Northern District of California

United States District Court
Northern District of California

**G.      Tender to Defendant.**

On November 18, 2019, Physicians tendered the third-party complaint filed by Chart against them to Defendant.  (Dkt. No 33-13 (Ex. 9 to Orloff Decl.); *see also* Dkt. No. 35-1 (Declaration of Shannon R. Gates), ¶¶ 6-7, Ex. A.)  Defendant denied coverage.  (Dkt. No. 33-15 (Ex. 11 to the Orloff Decl.).)

Additional tenders were made to Defendant on behalf of PFC and the Physicians on January 17, 2020, March 11, 2020, July 8, 2020, July 10, 2020, July 23, 2020, October 19, 2020. (Dkt. Nos. 33-16, 33-17, 33-18, 33-19, 33-21 (Exs. 12, 13, 14, 15, 17 to Orloff Decl.); *see also* Dkt. No. 34-22 (Ex. 20 to Casey Decl.).)

On July 7, 2020, counsel for Conaghan initially tendered his defense in the Underlying Actions to Defendant.  (Dkt. No. 33-23 (Ex. 19 to Orloff Decl.).)  Conaghan tendered additional claims to Defendant on August 27, 2020.  (Dkt. No. 33-6 (Ex. 2 to Orloff Decl.).)

Defendant denied coverage for all of the claims in the Underlying Actions.  (Dkt. Nos. 33-15, 33-20, 33-22, 33-24 (Exs. 11, 16, 18, 20 to Orloff Decl.).)

**H.      Settlements Related to Underlying Actions.**

Pacific MSO, Prelude, PFC, Conaghan, and the Physicians reached a global settlement agreement to resolve the claims against them in all courts and arbitration proceedings for $29.9 million.  (Dkt. No. 35-25 (Ex. 21 to Casey Decl.); *see also Pac. Fertility Cases*, 78 Cal. App. 5th 568, 574 (2022).  Of the $29.9 million global settlement, Prelude paid $22.9 million for Prelude's portion of the settlement and release.  (Dkt. No. 35-25 (Ex. 21 to Casey Decl.) at ¶ 8(a-b).) Prelude paid an additional $1 million for a release of all claims against Conaghan.  (*Id*. at ¶ 8(d).) Chart was not part of that settlement.

In March 2022, Defendant executed a settlement agreement and release with Prelude, Pacific MSO, Conaghan, PFC, and the Physicians.  (Dkt. No. 35-25 (Ex. 21 to Casey Decl.).) Pursuant to this settlement, Defendant paid Prelude $1.75 million, of which $1 million was allocated to the settlement on behalf of the Physicians for the Underlying Actions.  (*Id*, ¶ 3.)  The remainder of the settlement amount was for a release of any and all claims against Defendant, including any claim for indemnity in the Underlying Actions.  (*Id*.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ANALYSIS

**A.**     **Applicable Legal Standard on Motion for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, set forth specific facts showing that there is a genuine issue for trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must take care to adequately point a court to the evidence precluding summary judgment because a court is "not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001)

1   (citation omitted).  If the non-moving party fails to point to evidence precluding summary

2   judgment, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.

3   **B.**     **Plaintiff's Motion for Partial Summary Judgment.**

4       Plaintiff moves for partial summary judgment on the issue of whether Defendant owed a

5   duty of coverage to PFC, the Physicians, and Conaghan, whom Plaintiff had also insured and

6   defended in the Underlying Actions.  The Court finds that there are questions of fact which

7   preclude summary judgment on this issue.

8       Under California law, "[e]quitable contribution permits reimbursement to the insurer that

9   paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory

10   that the debt it paid was *equally* and *concurrently* owed by the other insurers and should be shared

11   by them pro rata in proportion to their respective coverage of the risk."  *Fireman's Fund Ins. Co.*

12   *v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1293 (1998) (emphasis in original).  An insurer

13   seeking contribution has the initial burden of making a prima facie showing that the underlying

14   action was potentially covered under the nonparticipating insurer's policy.  *St. Paul Mercury Ins.*

15   *Co. v. Mountain West Farm Bureau Ins. Co.*, 210 Cal. App. 4th 645, 654 (2012).  If the insurer

16   seeking equitable contribution makes such a showing, then the burden shifts to the

17   nonparticipating insurer to prove the absence of actual coverage under its policy.  *Id.*

18       "An insurer must defend its insured against claims that create a *potential* for indemnity

19   under the policy."  *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643, 654 (2005)

20   (emphasis in original).  The duty to defend is determined by comparing the allegations of the

21   complaint with the terms of the policy.  *Id.*  But a duty to defend may also exist where extrinsic

22   facts known to the insurer suggest that the claim may be covered or where "under the facts

23   alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state

24   a covered liability."  *Id.*

25       Although Defendant argues that the Court need not examine the actual allegations

26   contained in the complaints and demands for arbitration in the Underlying Actions, the Court

27   notes that there are several hundreds of individual actions.  For this motion, Plaintiff provided

28   copies of only six of these complaints.  (Dkt. Nos. 33-5, 33-8, 33-9, 33-10, 33-11, 33-29 (Exs. 1,

United States District Court
Northern District of California

4, 5, 6, 7, 25 to Orloff Decl.).)  The complaints and demands for arbitration in the Underlying

Actions do not all name the same defendants and presumably do not all contain the same factual

allegations and claims.  From the few complaints from the Underlying Actions that Plaintiff did

file in connection with its motion, it is not clear that the claims in those lawsuits potentially fall

within the coverage of Defendant's policy.  Defendant's policy only provides coverage for claims

arising out of the Physicians' rendering or failing to render patient services results in a loss or

injury.  (Dkt. No. 33-37 (Ex. 23 to Orloff Decl.).)  As noted above, the definition of "Patient

Services" is limited to "health care services provided by the Insured to a patient including

treatment, diagnosis, referrals for treatment, rendering of medical opinions or providing medical

advice, furnishing or prescribing drugs, medical supplies or appliances. . . ."  (*Id.*)  While the

attached complaints do contain some background allegations regarding the medical services the

Physicians provided in fertility treatments, the actual claims concern the failure of the tank and the

failure to preserve the patients' tissue, as well as alleged misrepresentations regarding the tissue

preservation.  (Dkt. Nos. 33-5, 33-8, 33-9, 33-10, 33-11, and 33-29 (Exs. 1, 4, 5, 6, 7, and 25 to

Orloff Decl.).)  It is not clear what is contained in the other complaints in the Underlying Actions

because Plaintiff did not file any copies of them.

  In addition, the main federal complaint did not include the Physicians as named

defendants; the Physicians were only brought into the suit later when Chart filed a third-party

complaint against them.  Only one of the complaints from the Underlying Actions that Plaintiffs

provide for this motion names one of the Physicians and Conaghan as defendants.  (Dkt. No. 33-8

(Ex. 4 to Orloff Decl.).)  Based on the information in the record, the Court cannot find, as a matter

of law, that Defendant owed a duty to defend any, let alone all, of those actions.  In fact,

Defendant's duty to defend the complaints before the Court from the Underlying Action appears

doubtful.[2]  For this reason, the Court DENIES Plaintiff's motion for partial summary judgment.

---

[2] Despite the doubtful nature of Defendant's duty to defend in the Underlying Actions, the Court does not grant Defendant's summary adjudication on this issue because Defendant did not affirmatively move for partial summary judgment on its duty to defend and because the Court finds that Defendant's payment of a $1.75 million settlement for the parties, including the Physicians, in the Underlying Action, as described above, creates a question of fact regarding its duty to defend.

United States District Court
Northern District of California

United States District Court
Northern District of California

Because the Court finds that there is at least one genuine issue of material fact which precludes partial summary judgment, the Court need not address the parties' remaining arguments regarding Plaintiff's motion.

**C.     Defendant's Motion for Partial Summary Judgment.**

Defendant moves for partial summary judgment on two issues: (1) whether Plaintiff may seek equitable contribution for attorneys' fees and costs expended before Defendant was provided notice of the claim on November 18, 2019; and (2) whether Plaintiff may seek equitable contribution for attorneys' fees and costs expended by Morrison and Foerster in defending Prelude, Pacific MSO, and Conaghan.

**1.     Attorneys' Fees and Costs Incurred Before Tender.**

Defendant argues that Plaintiff should be barred from seeking equitable contribution for the substantial attorneys' fees and costs incurred before the Underlying Actions were first tendered to Defendant on November 18, 2019.  In response, Plaintiff argues that, because its claim for contribution is based on equity, instead of contract, Defendant should be required to contribute equitably for its fair portion of all the attorneys' fees and costs incurred, even before tender. However, the only case Plaintiff cites in support, *OneBeacon America Insurance Company v. Fireman's Fund Insurance Company*, 175 Cal. App. 4th 183 (2009), actually demonstrates that any right to equitable contribution starts *after* constructive notice has been provided.  The court in *OneBeacon* held that the plaintiff's entitlement to equitable contribution began on February 26, 1999, for one party and by July 29, 1999, for another, based on when each party was on notice of the underlying claims.  *Id*. at 206-07.  Plaintiff did not cite to, and the Court did not find, any authority showing that it may recover any equitable contribution incurred before constructive notice was provided.  Accordingly, the Court GRANTS Defendant's motion for partial summary judgment that Plaintiff is not entitled to any equitable contribution for attorneys' fees and costs incurred before tender on November 18, 2019.

**2.     Attorneys' Fees Paid to Morrison & Foerster.**

Defendant argues that Plaintiff cannot seek equitable contribution from Defendant for any fees incurred on behalf of Conaghan because the Complaint in this action did not mention him and

only sought equitable contribution for coverage for the Physicians.  Thus, Defendant seeks partial summary judgment on this issue.

In its Complaint, Plaintiff did not mention Conaghan; Plaintiff alleges that both it and Defendant insured the *Physicians*, whom Plaintiff defined as the "Insureds."  (Dkt. No. 1, ¶¶ 5, 7.)  Plaintiff does not identify Conaghan as one of its insureds or as one of Defendant's insureds, and the Complaint contends that the allegations in the Underlying Actions against the Physicians triggered Defendant's duty to defend.  (Dkt. No. 1, ¶ 11.)  Based only on Defendant's refusal to defend the Physicians in the underlying litigation, Plaintiff seeks equitable contribution toward Plaintiff's defense of the Physicians.  (*Id.*, ¶¶ 13, 16-18.)  Plaintiff also seeks to be indemnified for its representation of the Physicians.  (*Id.*, ¶¶ 21-23.)  Nowhere in the Complaint does Plaintiff argue that it seeks equitable contribution and indemnity for Conaghan.  (Dkt. No. 1, *passim*.)

Defendant also notes that, not only did Plaintiff fail to claim coverage for Conaghan in its Complaint, but Plaintiff also failed to mention this issue in any subsequent filing, including the multiple case management statements.  (Dkt. Nos. 34-27, 34-28, 34-29, 34-30 (Exs. 25-28 to Casey Decl.).)  While Defendant did mention Conaghan in its initial disclosures as an individual with discoverable information (*see* Dkt. No. 34-31 (Ex. 29 to Casey Decl.)), this mention, standing alone, is insufficient to raise claims for equitable contribution for litigation expenses incurred on Conaghan's behalf or give notice to Defendant of Plaintiff's intent to include Conaghan in its claims for equitable contribution.  Plaintiff argues that its Complaint put Defendant on notice of that its claims included Conaghan because Plaintiff sought discovery related to him.  However, Plaintiff fails to provide any supporting evidence of this fact, let alone evidence sufficient to show that Defendant understood from Plaintiff's Complaint that it was seeking equitable contribution related to Conaghan.

Similarly, Plaintiff argues that its attachment of Defendant's insurance policy, which includes an endorsement for coverage of laboratory activities that identifies Conaghan as one of the laboratory personnel, placed Defendant on notice of Plaintiff's inclusion of Conaghan in its claim for equitable contribution.  (Dkt. Nos. 1-3, 1-4.)  However, in light of the Complaint's allegations, which entirely omit any mention of Conaghan, the mere attachment of Defendant's

insurance policies for the Physicians, which also includes a laboratory endorsement with Conaghan's name, is insufficient to raise a claim for equitable contribution based on Conaghan.

The timeline shows that, before Plaintiff filed this action on September 3, 2021, it was well aware of Conaghan's role in the Underlying Actions.  Before Plaintiff filed this action against Defendant, all of the individual actions in the Underlying Actions had been filed, including at least one complaint in state court which named Conaghan as a defendant and Chart's third-party complaint in the federal action naming Conaghan as a third-party defendant.  (Dkt. Nos. 33-5, 33-8, 33-9, 33-10, 33-11, 33-29 (Exs.1, 4, 5, 6, 7, 25); *In re Pacific Fertility Center, et al.*, Case No. 18-cv-01586-JSC at Dkt. No. 288.)  Plaintiff provided coverage in the Underlying Actions to the Physicians, PFC, Prelude, Pacific MSO, *and Conaghan*.  All of the individual actions and arbitration demands in the Underlying Actions had been tendered to Defendant, including the individual tenders on behalf of Conaghan.  (Dkt. Nos. 33-6, 33-13, 33-16, 33-17, 33-18, 33-19, 33-21, 33-23 (Exs. 2, 9, 12, 13, 14, 15, 17, 19 to Orloff Decl.); Dkt. No. 34-22 (Ex. 20 to Casey Decl.); Dkt. No. 35-1 (Gates Decl., ¶¶ 6-7, Ex. A).)  Defendant had denied coverage for all defendants in the Underlying Actions.  (Dkt. Nos. 33-15, 33-20, 33-22, 33-24 (Exs. 11, 16, 18, 20 to Orloff Decl.).)  As discussed above, the Physicians requested and Plaintiff agreed to hire separate counsel to represent them, and Plaintiff hired Morrison & Foerster to defend Prelude, Pacific MSO, and Conaghan, and a different firm to represent the Physicians and PFC.  (Dkt. No. 35-9 (Ex. 5 to Casey Decl.) at 43:7-44:15; Dkt. No. 35-16 (Ex. 12 to Casey Decl.); Dkt. No. 35-16).)[3]  Chart filed its opposition to the motion for class certification in the federal action alleging that prior incidents in 2013 and 2014 in which Tank 4 lost liquid nitrogen could have negatively affected the tissue stored in Tank 4.  (*In re Pacific Fertility Center, et al.*, Case No. 18-cv-01586-JSC at Dkt. No. 353.)  Tender on behalf of Conaghan specifically mentioned Chart's opposition brief.  (Dkt. No. 33-6 (Ex. 2 to Orloff Decl.).)  The verdict from the trial in federal court was entered.  (*In re Pacific Fertility Center, et al.*, Case No. 18-cv-01586-JSC at Dkt. No. 858.)  PFC, the Physicians, Prelude, Pacific MSO, and Conaghan entered into a global settlement with the

---

[3] Plaintiff's counsel confirmed at the hearing on these motions that Conaghan was only defended in the Underlying Actions by Morrison & Foerster.

United States District Court
Northern District of California

1    plaintiffs in the Underlying Actions to resolve all claims against them for $29.9 million.  (Dkt. No.

2    35-25 (Ex. 21 to Casey Decl.); *see also Pac. Fertility Cases*, 78 Cal. App. 5th at 574.  And as

3    discussed above, Prelude paid a substantial amount – an additional $1 million – specifically for a

4    release of all claims against Conaghan.  (Dkt. No. 35-25 (Ex. 21 to Casey Decl. at ¶ 8(d)).)  These

5    undisputed facts demonstrate that, before Plaintiff filed its Complaint in this Action, Plaintiff had

6    more than sufficient time and information to determine Conaghan's involvement in the

7    Underlying Actions and make an informed decision as to whether to include him in its request for

8    equitable contribution.  But Plaintiff did not do so.

9          Plaintiff argues that, because Defendant was on notice that Conaghan was an insured at the

10   time of tender, Defendant cannot prevent Plaintiff from asserting Defendant's theory excluding

11   Conaghan in this litigation now.  (Dkt. No. 37 at page 2.)  First, the Court notes that the case

12   Plaintiff cites to in support this argument is misleading.  (Dkt. No. 37 at page 2 (citing *U.S.A.*

13   *Nutrasource, Inc. v. CNA Ins. Co.*, 140 F. Supp. 2d 1049, 1054 (N.D. Cal. 2001)).  The court in

14   *U.S.A. Nutrasource* addressed the fact that a duty defend is not limited to the pleadings of the

15   complaint in the underlying actions.  But that is not what is at issue here.  In Defendant's motion

16   for partial summary judgment, the issue is not whether the *Underlying Actions* asserted claims

17   against Conaghan.  The issue raised by Defendant's motion is whether *Plaintiff in this action*

18   properly placed Defendant on notice of Plaintiff's effort to seek equitable contribution for

19   litigation expenses incurred on behalf of Conaghan.  Plaintiff did not do so and thus may not make

20   that claim now.

21         Second, Plaintiff misapprehends the nature of litigation.  Even if a party has a dispute at an

22   earlier stage, the complaint defines the contours of the dispute for litigation.  Without notice in the

23   complaint, a defendant does not have notice of the nature of the dispute.  For example, a plaintiff

24   may have a larger set of disputes with a defendant but choose to litigate only one.  For this reason,

25   the fact that Defendant might have been on notice of Conaghan's tender and that Plaintiff

26   defended Conaghan in the Underlying Actions does not allow Plaintiff to proceed with a claim for

27   equitable contribution against Conaghan that was not included in the Complaint or in any

28   subsequent pleading in this litigation.  It is reasonable to assume that Plaintiff might abandon any

United States District Court
Northern District of California

claim for equitable contribution for Conaghan because there were many differences in the

Underlying Actions between Conaghan and the Physicians, including that Conaghan tendered his

claims separately from the Physicians, that he was represented by different counsel, and that

Prelude paid for Conaghan's portion of the global settlement and release.  Regardless of Plaintiff's

intentions, because Plaintiff limited its definition of the "Insureds" in its Complaint to the

Physicians only and because Plaintiff failed to even mention Conaghan in its Complaint, Plaintiff

cannot seek equitable relief on behalf of Conaghan now.

Finally, the Court notes that this case is in the late stages.  All discovery has long since

closed.  The deadline for non-expert discovery was November 15, 2022, and the deadline for

expert discovery was January 16, 2023.  The pretrial conference is scheduled for less than two

months, on June 23, 2023, and trial is scheduled to begin on August 1, 2023.  The parties should

be working on their motions *in limine* and other pretrial filings at this point.  Any amendment to

Plaintiff's pleadings to include Conaghan at this late stage would be highly prejudicial to

Defendant.[4]

Because Plaintiff failed to plead that it is entitled to equitable contribution for the costs of

defending Conaghan, Plaintiff cannot seek equitable contribution from Defendant for Conaghan.

Therefore, Plaintiff has not demonstrated any question of fact regarding its entitlement to seek

equitable contribution from Defendant for attorneys' fees paid to Morrison & Foerster.

Accordingly, the Court GRANTS Defendant's motion on this ground.

/ / /

/ / /

/ / /

/ / /

---

[4] At the hearing in response to the Court's questions, Plaintiff requested leave to amend to add Conaghan to conform to proof, not to add new claims.  But Plaintiff did not file any evidence to show that an amendment to conform to proof would be warranted.  Additionally, any amendment at this late stage in the litigation would be unduly prejudicial to Defendant.  *Cf. Galindo v. Stoody Co.*, 793 F.2d 1502, 1513 (9th Cir. 1986) ("An amendment that seeks to conform the pleadings to proof introduced at trial is proper under Rule 15(b) unless it results in prejudice to one of the parties.").

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for partial summary judgment and GRANTS Defendant's motion for partial summary judgment.

**IT IS SO ORDERED**.

Dated: May 16, 2023

SALLIE KIM
United States Magistrate Judge

United States District Court
Northern District of California

14